**GIFFORD-HILL & CO., Inc., et al. v. JONES.**

No. 3437.

Court of Civil Appeals of Texas. El Paso.

Nov. 19, 1936.

Rehearing Denied Dec. 17, 1936.

Aldredge, Shults & Madden, of Dallas, for appellants.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

PELPHREY, Chief Justice.

During the month of September, 1932, the Trinity Farm Gravel Company, being

unable to make a bond for the performance of a road contract with the state of Texas on a project in Reeves county, through its then president, entered into a verbal agreement with the president of appellant, Gifford-Hill & Company, Inc., whereby it was agreed that appellant would indemnify some bonding company to act as surety for the Trinity Farm Gravel Company on the contract and for such service would receive 5 per cent. of the gross amount paid by the state. There is a conflict in the evidence as to other features of the agreement which will be discussed later, but that appellant was to secure the bond and was to receive five per cent. of the gross all agree. Appellant thereafter secured a bond for the Trinity Farm Gravel Company through the Union Indemnity of New Orleans, La., and indemnified that company against loss. At this same time the Trinity Farm Gravel Company was engaged in performing another road contract for the state of Texas in Concho county. Because of a dispute with the state engineer and the default of one of the subcontractors, the Trinity Company sustained a loss on that contract of about $15,000. About this time the First National Bank in Dallas applied all the funds belonging to the Trinity Company on a note owing to the bank by it.

The Union Indemnity Company was surety for the Trinity Company on the Concho county contract also. A conference was held in Dallas at which the president of appellant, a representative of the First National Bank in Dallas, representatives of the Trinity Company and a representative of the Union Indemnity Company were present. During the discussion it was announced that the Union Indemnity Company had been placed in the hands of a receiver. This news caused an abandonment of the plan to have the Indemnity Company advance the funds to complete the Concho county contract, and thereupon an agreement was entered into between a representative of the Trinity Company and the president of Gifford-Hill Company, relative to the completion of the Reeves county project. As to the terms of this agreement, the evidence is in hopeless conflict, appellants contending that it was to pay to the Trinity Company the sum of $1,000; $500 for the assignment of the Reeves county contract and $500 for a lease on the equipment of the Trinity Company, and appellee contending that appellant was to retain 5 per cent. of the gross amount paid by the state and that all net profits over that

amount were to go to the Trinity Company. An assignment of the contract and a lease on the equipment were both executed by the Trinity Company and delivered to appellant's president.

The receiver of the Trinity Company filed a claim with the highway department of the state of Texas for $31,470.63 and the highway department withheld the sum of $20,000 due appellant. Appellant then executed a bond in the sum of $40,000 to the receiver of the Trinity Company conditioned that it would pay such portion or portions of the $20,000 as might be proved to be liens under the provisions of chapter 17 of the 39th Legislature (Vernon's Ann. Civ.St. arts. 5472a, 5472b). The Standard Accident · Insurance Company signed as surety.

Thereafter the receiver filed this suit, naming both appellant and the surety, seeking to recover from appellant and its surety the sum of $20,000 with an additional sum of $2,500 as attorney fees, and the further sum of $11,470.63 from appellant alone.

The jury found that the real consideration for the assignment by the Trinity Company was that the Trinity Company would deliver to Gifford-Hill Company its equipment with which to perform the Reeves county contracts and that Gifford-Hill Company would take over the performance of such contracts and receive therefor 5 per cent. of the gross amount paid by the state and that all net profits over and above such amount were to belong to the Trinity Company; that the amount of the net profits realized on the Reeves county job was $12,000; that a reasonable attorney's fee was $1,200, and that it was not agreed in January, 1933, at the time of the delivery of the assignment between the president of Gifford-Hill Company and the then president of the Trinity Company that the previous agreements were all annulled.

From a judgment that the receiver recover the sum of $12,000, jointly and severally, from the Gifford-Hill Company and the Standard Accident Insurance Company, this appeal was perfected.

### Opinion.

Appellants requested the trial court to submit issues as to its version of the original agreement; whether the Trinity Company had failed to perform its part of said agreement; whether the Trinity Company represented to the Gifford-Hill Company that it was unable to perform either the

Concho county or the Reeves county projects and requested Gifford-Hill Company to perform them; whether Gifford-Hill Company believed such representations and was induced by them to enter into a contract with the state to perform the Reeves county project and assume the risk of loss by so doing; whether the actual consideration for the assignment and the lease was the sum of $1,000; and whether the president of the Trinity Company at the time of or prior to the delivery of the assignment, waived all rights of the Trinity Company to profits on the Reeves county project.

The request was refused and the court's action in that particular is made the basis for appellants' assignments of error numbers 9, 10, 11, 12, 13, and 14.

It is a well-established rule that the theories of each party be directly submitted where they are raised by the evidence, and this right cannot be lost or defeated by jury findings on other issues, which, in effect, indirectly negative a favorable finding on an issue not submitted but raised by the evidence. Greer v. Thaman et al. (Tex.Com.App.) 55 S.W.(2d) 519, and authorities cited.

It is also well settled that in an action upon a contract, evidence is admissible to prove, under a general denial, another and different contract, and that, in any event, plaintiff was not entitled to recover. Winn v. Gilmer, 81 Tex. 345, 16 S.W. 1058; Galveston, H. & S. A. Railway v. Henry, 65 Tex. 685; Goodwin v. Biddy et al. (Tex.Civ.App.) 149 S.W. 739; Brodage v. Greenwood (Tex.Civ.App.) 261 S.W. 453; Amarillo Oil Co. v. Ranch Creek Oil & Gas Co. (Tex.Civ.App.) 271 S.W. 145. Conceding as contended by appellee that there is a variance between the agreement alleged by appellants and the evidence of Mr. Gifford, the fact remains that under their general denial appellants were entitled to have their version of the latter agreement passed upon by the jury. It may also be conceded that the issue requested may have been incomplete, yet it called the court's attention to the fact that their defense had not been submitted. We are, therefore, of the opinion that the judgment must be reversed and the cause remanded.

We find no error in the court's action in overruling the general demurrers and in overruling appellants' motions for instructed verdicts. The evidence, in our opinion, is sufficient to present an issue as to whether the consideration for the agreement was as asserted by appellee.

Appellants' objection to the submission of the issue as to the amount of the net profits; to the finding of the jury on that issue on the ground that it was not supported by the evidence and was excessive; and to the judgment for the sum found by the jury are without merit. The testimony of Mr. Lacy, secretary-treasurer of Gifford-Hill Company, and of Mr. Gifford, its president, beside being far from satisfactory on the amount of the net profits is that of officers of the company making their credibility and the weight to be given their testimony a question for the jury. Transcontinental Insurance Co. v. Frazier (Tex.Civ.App.) 60 S.W.(2d) 268; Goodrich v. Pandem Oil Corporation (Tex.Com.App.) 48 S.W.(2d) 606; American Surety Company v. Whitehead (Tex.Com.App.) 45 S.W.(2d) 958, 960.

The "Legal Terms" required to be explained or defined are only such terms as have in law and judicial proceeding a meaning different from their ordinary meaning. Texas & P. Railway v. Short (Tex.Civ.App.) 62 S.W.(2d) 995, and we cannot agree that "net profits" is such a term. See Schramm v. Wolff (Tex.Civ.App.) 126 S.W. 1185. While both parties alleged what they assert were the terms of the original agreement we feel that appellee's right to recover depends not upon what that agreement was, but upon the terms of the agreement made in connection with the assignment. Evidence of the original agreement, therefore, except in so far as it aids in the determination of what were the terms of the latter agreement, should be excluded.

We cannot agree that issue No. 1 submitted by the court is either vague, indefinite, or too general and its failure to inquire as to the individuals representing the respective companies certainly did not tend to mislead the jury, under the facts here, where there was no dispute as to the authority of the persons acting. This issue did not comment on the weight of the evidence.

The court properly refused to charge the jury that by "a preponderance of the evidence" did not necessarily mean the greater number of witnesses. The charge as given, we think, was sufficient.

The propositions raising the question of the propriety of rendering a joint and sev-

eral judgment against the appellants, and the amending of the judgment at a succeeding term, will probably not arise on another trial and will not be discussed. The same is true of the propositions relating to the argument of counsel.

The judgment of the trial court is reversed, and the cause remanded.